Joshua Swigart (SBN 225557)
Josh@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA  92108
P: (866)219-3343

Kevin Lemieux (SBN 225886)
Kevin@LawyerKevin.com
**LAW OFFICE OF KEVIN LEMIEUX, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA  92108
P: (619) 488-6767

*Attorneys for Plaintiffs*

Daniel Shay (SBN 250548)
Dan@ShayLegal.com
**SHAY LEGAL, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA  92108
P: (619) 222-7429

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DEL CARMEN ESPINOZA and DONNA GUIDRY, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>WR GP LLC, WINNRESIDENTIAL MANAGER CORP., and BLDG PARTNERS LLC,<br><br>                Defendants. | Case No:<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT**<br><br>1. Unlawful Rent Increase;<br>2. Breach of the Implied Warranty of Habitability;<br>3. Violation of § 12-1.12 of the Hayward Anti-Harassment Ordinance;<br>4. Breach of Written Contract;<br>5. Breach of the Implied Covenant of Good Faith and Fair Dealing;<br>6. Unfair and Deceptive Business Practices;<br>**7.** Rosenthal Fair Debt Collection Practices Act;<br>8. Unlawful Retention of Residential Security Deposits;<br>9. Statutory Larceny;<br>10. Negligence;<br>11. Unlawful Liquidated Damages<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Maria Del Carmen Espinoza ("Plaintiff Espinoza") and Donna Guidry ("Plaintiff Guidry") (together, "Plaintiffs") bring this class action on behalf of themselves, and the thousands of other similarly situated tenants ("Class Members") that are part of the Classes defined below, against defendants WR GP LLC, WinnResidential Manager Corp., (Collectively, Property Manager"[1]) and BLDG Partners LLC ("Owner"). Property Manager and Owner ("Defendants") are tightly intertwined with the same objectives and interests. Plaintiffs make these allegations based on personal knowledge and investigation conducted by their attorneys.

## INTRODUCTION

1.     Plaintiffs bring this Class Action due to Defendants' intentional failure to follow landlord tenant laws regarding unlawful rent increases, unlawful debt collection practices, and unlawful retention of residential security deposits, all while Defendants failed to maintain minimally habitable living conditions.

2.     Property Manager has assumed the duty to manage and maintain Owner's rental units, at the apartment complex commonly known as "Lord Tennyson Apartments" located at 2191 W Tennyson Road, Hayward, California 94545 ("Tennyson"), among other residential dwelling units throughout California.

3.     Around 2024, Property Manager became the manager at Tennyson. Property Manager immediately began to implement policy changes and rent increases without proper notice to tenants. Property Manager and Owner allowed each apartment, and the common areas, to fall into a state of uninhabitable disrepair and refused to make timely, adequate repairs.

4.     Property Manager manages a significant number of other housing units for various landlords and property owners throughout California. Property Manager has a policy and procedure of using uniform management practices when managing all its properties. Property Manager assumed the duty to manage and maintain these

---

[1] Plaintiffs do not know which of these two Defendants is the controlling entity. Since they are indistinguishable at this point, Plaintiffs will refer to both entities as a singular entity, unless specified otherwise.

additional rental units.

5.     While the events and conditions at Tennyson do not meet the minimal requirements of habitability as discussed below, what is most disturbing is that the conduct alleged herein was intentionally designed as a secret organized scheme to place profits over people—by whatever means available—through abusing the disparate power in negotiation.. Most of the tenants are low-income, disabled, or otherwise especially vulnerable.

6.     Property Manager has a uniform practice of charging unlawful fees in addition to  raising rents by unlawfully excessive amounts and not providing legally compliant notices of rent increases.

7.     Property Manager routinely raises rents without any notice to the tenants and utilizes an app ("Maya") to communicate with tenants.

8.     For the past several years, many tenants at Tennyson have reported severe habitability and sanitation issues at Tennyson to the City of Hayward. There are hundreds of pages of code enforcement violations and investigations related to the conditions at Tennyson, originating within the past two (2) years alone.

9.     Such dilapidations generally include, but are not limited to (1) rampant mold growth, (2) unsafe common areas (ranging from run-down and destroyed on-site laundry facilities, to lack of fire safety equipment like fire extinguishers, and inoperable security features, like a locking gate, security cameras, common area lighting and security patrols), (3) accumulation of trash and rubbish which overflows from dumpsters and spills into common areas and parking spaces, (4) insect/vermin/rodent infestation, and, importantly, (5) lack of hot water (these specific conditions, including the specific citations from the City of Hayward Code Enforcement, shall be collectively referred to as "Habitability Conditions")

10.     Defendants' repeated failures to address the Habitability Conditions at Tennyson have substantially interfered with the Tennyson tenants' right to quiet enjoyment.

CLASS ACTION COMPLAINT

11. Defendants are well aware of the conditions at Tennyson.

12. Defendants regularly issue many "notices of entry" wherein they purport to be entering a tenant's rental unit for a valid reason. However, Defendants hardly ever, if ever, enter the units during the notice period.

13. Tenants often prepare their units for Defendants' entry, including committing to being present during the notice period and taking time off work, but then Defendants do not show up and do not do the work. Tenants informed Defendants that such failures to appear were unacceptable.

14. Defendants, in response, began issuing notices of entry where the notice period was not for a specific set date and time that they could be held to, but the notice period covered entire weeks or months, stating entry could happen at any time. Such notices of entry are invalid because they are too vague.

15. Defendants abused the landlord's right of entry when they entered units pursuant to these vague notices.

16. As a result of Defendants' conduct, Plaintiffs and Class Members have been harmed and damaged in many ways.

17. Plaintiffs, on behalf of themselves and all others similarly situated, allege claims for (1) Unlawful Rent Increases; (2) Violations of the Implied Warranty of Habitability (Cal. Civ. Code § 1941 et seq); (3) Violation of § 12-1.12 of the Hayward Mun. Code; (4) Breach of Written Contract; (5) Breaches of the Implied Covenant of Good Faith and Fair Dealing; (6) Violations of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq); (7) Violations of the Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code § 1788 et seq); (8) Statutory Larceny (Cal. Pen. Code §§ 484 & 496); (9) Unlawful Retention of Residential Security Deposits (Cal. Civ. Code § 1950.5); (10) Negligence and (11) Unlawful Liquidated Damages (Cal. Civ. Code § 1671).

18. Plaintiffs and the Class Members seek damages and an injunction forcing Defendants to stop abusing their tenants and compelling them to adopt adequate

4

CLASS ACTION COMPLAINT

practices regarding the handling of security deposits, fees and costs.

## JURISDICTION AND VENUE

19. Jurisdiction is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because all Plaintiffs and all Class Members are citizens of California, while Defendants are incorporated in Massachusetts and Delaware, and the amount in controversy exceeds $5,000,000.

20. Plaintiffs and Class Members are requesting (i) actual damages related to rent increases, unlawful fees, and security deposit retentions; (ii) statutory damages for unlawful debt collection activities and unlawful retention of security deposits; (iii) attorney's fees and costs; and, (iv) injunctive relief requiring Defendants to adopt new management policies, practices, and procedures—in addition to requiring Owner to make substantial habitability repairs—which, when aggregated across the proposed class number in the tens of thousands, will exceed the $5,000,000 threshold for CAFA jurisdiction.

21. Both the diversity requirement and the damages requirement under CAFA are met, and this Court has jurisdiction.

22. Because Defendants have locations in California and directly conduct business in California, personal jurisdiction is established.

23. Venue is proper pursuant to 28 U.S.C. § 1391 because (1) Plaintiffs reside in the County of Alameda, State of California, within this judicial district (2) the conduct complained of herein occurred within this judicial district and (3) Defendants conduct business within this judicial district.

## PARTIES

### A. PLAINTIFFS

24. Plaintiff Espinoza is an individual over the age of eighteen (18) and is a resident of Alameda County in California. She is a current tenant at Tennyson.

25. Plaintiff Guidry was a tenant at Tennyson until this year and is an individual over the age of eighteen (18) and is a resident of Alameda County in

California.

**B. DEFENDANTS**

26. WR GP LLC is a limited liability company formed in Massachusetts with its principal place of business in Massachusetts.

27. WinnResidential Manager Corp. is a corporation formed in Massachusetts with its principal place of business in Massachusetts.

28. WR GP LLC and WinnResidential Manager Corp ("Property Manager") together form a multifamily property management conglomerate that manages apartment communities throughout the United States. It manages a significant number of properties in California as part of its portfolio. Property Manager manages many low income or affordable housing communities. According to Property Manager's website, Property Manager operates approximately two hundred and four (204) properties in California,[2] which likely total to thousands of individual units in California. Property Manager has been recognized as one of the top ten (10) management firms in 2025, presumably by volume.[3]

29. Bldg Partners LLC ("Owner") is a limited liability company formed in Delaware with its principal place of business in California. It owns Tennyson which is comprised of hundreds of individual units across many buildings. It "has acquired over 4,000 units of affordable, middle-income, and market-rate housing with a transaction value in excess of $650 million."[4] It "operates in 12 states across the U.S.: California, Delaware, Georgia, Nevada, New Mexico, North Carolina, Ohio, Pennsylvania, Tennessee, Texas, Virginia, Washington" according to its website.[5]

30. Owner is vicariously liable for Property Manager's acts and omissions alleged herein, if not directly liable. Property Manager is the legal and designated agent of Owner with the power to enter leases on behalf of Owner, file lawsuits against

---

[2] https://www.winncompanies.com/fyh-results#?search=CA (last visited April 17, 2026)
[3] Nat'l Multifamily Hous. Council, 2025 NMHC Top Managers List, https://www.nmhc.org/research-insight/the-nmhc-50/top-50-lists/2025-top-managers-list/ (last visited April 10, 2026)
[4] https://www.bldgpartners.com/about (last visited April 10, 2026)
[5] https://www.bldgpartners.com/properties/affordable (last visited April 10, 2026)

tenants for Owner, etc.

31.    Property Manager is directly liable for its own acts and omissions as alleged herein, at Tennyson and every other property in California that it manages.

32.    Defendants, as landlords, have a non-delegable duty to provide a habitable premises to all their tenants.

33.    Defendants were or are Plaintiffs' and Class Members' landlord at all times relevant.

## FACTUAL ALLEGATIONS

### A. Background

34.    Many years ago, Plaintiff Espinoza began residing at Tennyson, after paying a security deposit and signing a written lease agreement.

35.    The lease agreement is generally the same form document ("Lease") that all tenants at Tennyson sign.

36.    Around 2011, Plaintiff Guidry began residing at Tennyson, after paying a security deposit and signing the Lease.

37.    Around 2024, Property Manager became the manager of Tennyson.

38.    Property Manager assumed the role of landlord for all leases for all residents of Tennyson, as such leases existed prior to Property Manager becoming the manager of Tennyson.

39.    When Property Manager became the landlord at Tennyson, it implemented significant  cost cutting measures by not maintaining each unit or common areas.  It increased revenue by raising rent and charging unlawful fees.

### B. Binding Memorandum Between City and Owner

40.    On or around April 29, 2024, Owner and the City of Hayward entered a Binding Memorandum of Understanding Regarding Expanded Tenant Protections at Lord Tennyson Apartments ("Memorandum") attached hereto as EXHIBIT A.

41.    The Memorandum discusses a "capital infusion to allow for much needed capital improvements at [Tennyson] as well as a change in management to ensure

[Tennyson] remains a well run [*sic*], safe, and clean affordable housing community." The Memorandum is, in part, made for the benefit of the tenants at Tennyson.

42.     The Memorandum states: "The City has expressed concerns to the Owner and BLDG Partners that the change in management and Recapitalization may result in significant rent increases which will negatively impact current tenants at the Project." EXHIBIT A

43.     The City was attempting to ensure that Defendants did not raise rent beyond the limit and that the proper procedures are followed.

44.     The Memorandum is silent on the amount of capital that Owner received in 2024. Plaintiffs intend to request that information in discovery and from the City via a Freedom of Information Request or subpoena. As an aside, Lord Tennyson received $14.6 Mil from the City and $8.9 Mil in a federal tax credit in 2007.[6]

**C. Raised Rent and Late Fees**

45.     Defendants routinely raise rent without adequate, or sometimes any, notice to the tenants at Tennyson.

46.     Defendants have a policy of continuing to accept rent from tenants upon expiration of fixed-term leases. By law, this creates a month-to-month tenancy. When Defendants become aware their failure to initiate a new fixed-term lease, they backdate leases to cover their failures and alter the dates of fixed-term tenancies.

47.     When Defendants backdate or otherwise renew fixed-term tenancies, they raise the rent. Defendants do not provide any notice that rent is being increased from one tenancy to the next.

48.     Plaintiffs and Class Members had no idea that the rent was raised, and Plaintiffs and Class Members continued to pay the old rent. Defendants accepted such rent payments as they came in, without mentioning any alleged deficiencies.

49.     Property Manager waited months before utilizing Maya to send text messages to Plaintiffs and Class Members stating that they owed Defendants money

---

[6] https://www.eastbaytimes.com/2007/02/27/lord-tennyson-apartments-get-face-lift/ (last visited April 10, 2026).

CLASS ACTION COMPLAINT

for unpaid rent and late fees for such non-payment of rent. They intentionally allowed many months to pass so they could charge more late fees.

50.    Defendants also raised rent, and demand payment, for units at Tennyson that were recently cited by the City for uninhabitable conditions.

51.    Notices of nonpayment of rent (that conform to the law) are a condition precedent to filing a case for unlawful detainer (an eviction). Yet, Defendants routinely issued notices of impending eviction to intimidate Plaintiffs and Class Members to pay the increased rent.

52.    Defendants demanded payment for late fees in addition to the increased rent amount.

53.    Defendants delayed processing timely rent payments by Plaintiffs and Class Members and then charge them late fee for untimely payments.

54.    For example, rent is due on the first of the month with a late fee to be assessed for payments on or after the fifth of the month. But when Plaintiffs and Class Members paid rent on the third of the month, Defendants charged them late fees. While the payment itself was timely, the payment of rent would allegedly process on or after the fifth of the month, so Defendants would charge a late fee.

55.    Defendants applied payments made to late fees and unpaid rent first, without authority to do so, and then did not inform Plaintiffs and Class Members of how such payment was allocated. Subsequently, another late fee would be assessed for the next rent payment because a portion of rent was unpaid due to the way Defendants illegally applied payments. And so, the cycle would continue, while Defendants raked in the illegal fees, month after month, from low-income tenants.

56.    In addition to being undisclosed, the late fees exceeded the costs Defendants actually incurred for such allegedly untimely payments. Defendants did not even attempt to determine the costs they would incur due to any late payment of rent, if any. Rather, Defendants sought to squeeze as much as they could out of its low-income tenants.

57.     Plaintiffs paid such fees thinking that they were complying with their contractual obligations.

58.     Had Plaintiffs and Class Members known the fees Defendants charged were unlawful, they would not have paid them.

**D. Failure to Make Repairs**

59.     Defendants routinely did not, despite many requests being made, initiate or complete necessary repairs to address illegal conditions that Plaintiffs and Class Members reported.

60.     Plaintiff Guidry, as a primary example, made many requests to Property Manager to repair water issues (including lack of hot water), mold issues, and several other habitability related complaints. The conditions regarding the water deteriorated so much that Plaintiff Guidry kept a container of "emergency water" in her unit, for when the water would, inevitably, shut off. Similar to a refugee camp, this is the practice of many tenants at Tennyson.

61.     The conditions in Plaintiff Guidry's unit worsened. The carpet became so unbearably moldy in one of the rooms that she had no choice but to remove it. All contaminated surfaces were removed, and Plaintiff Guidry was left with a bare, exposed plywood subfloor. The floor was left in this condition for many months. Property Manager, aware of the condition and of the remedial measures, continued to ignore Plaintiff Guidry's needs. The plywood floor remained exposed, and the other habitability issues persisted, until Plaintiff Guidry fled.

62.     After months of neglect, Plaintiff Guidry could not stand living in the substandard housing at Tennyson. On or around January 2, 2026, Plaintiff Guidry vacated her longtime home and moved to senior living in Antioch, California, as her only reasonable housing option.

63.     Plaintiff Guidry is not alone in dealing with how Defendants respond to habitability complaints.

**E. Habitability**

64.    Under Cal. Civ. Code § 1941.1, a landlord is *required to provide* a dwelling that substantially complies with habitability standards, including: (1) effective waterproofing and weather protection of roof and exterior walls; (2) plumbing facilities in good working order *with hot and cold running water* connected to a sewage system; (3) properly installed and maintained gas facilities; (4) heating units in good working order; (5) electrical lighting with wiring and outlets in good working order; (6) *clean and sanitary buildings, grounds, and common areas free from debris, filth, and vermin*; (7) *adequate garbage and waste receptacles*; (8) floors, stairways, and railings maintained in good repair; and (9) a building maintained in compliance with applicable building and housing codes materially affecting health and safety. *See* Cal. Civ. Code § 1941.1 (emphasis added).

65.    Accordingly, a landlord is responsible for providing dwellings with hot water and adequate garbage receptacles, which are free of pests, among other things.

66.    In the past two (2) years, the City has extensively investigated the conditions at Tennyson, but only for the tenants who have reported the violations and sought intervention. The City has issued over three hundred (300) pages of investigations and violations at Tennyson for the dilapidations discussed above. Defendants, despite knowledge of the dilapidations, do the minimal work required, if any. This is an intentional strategy of taking advantage of low-income, vulnerable tenants, while collecting public funding.

67.    Defendants have attempted to address the hot water issue by replacing the individual water heaters, previously stored within each individual unit, with water heaters for each building, that usually has about eight (8) to twelve (12) units. The new water heaters do not serve units individually and are no longer stored in each unit. The new water heaters do not meet the needed demand for each unit and usually run out of hot water. The water heaters are stored outside, next to the building, in the open, exposed to cold outside air and the elements. But most importantly, they are of insufficient size which causes them to run out of hot water daily. The hot water that

11

CLASS ACTION COMPLAINT

does make it to the units arrives as a dribble with insufficient water pressure. Each unit should have its own hot water heater, which is the industry standard, or alternatively Tennyson should install very large central water heaters like hotels.

68. Tenants uniformly report that their unit has no hot water daily. Many of them are forced to use the stove to heat water so they can wash their body before going to work.

69. Further complaints include non-working stoves and refrigerators, pest infestations, accumulations of trash, dangerous and dilapidated laundry facilities in common areas, unsafe living conditions, lack of working security equipment, such as common area lighting, gates, and cameras (which previously monitored common areas).

**F. Security Deposits**

70. On or around December 3, 2025, Plaintiff Guidry gave written 30-day notice that she would be vacating her unit. Plaintiff Guidry informed Property Manager of her new address.

71. A landlord cannot make deductions to the security deposit for anything it likes. California law is very clear as to what deductions a landlord may make to the security deposit, and the timing by which a landlord must act.

72. The California Supreme Court said it best,

> From the plain language of the statute we conclude that a landlord (1) must return a tenant's security deposit within the specified period after the termination of the tenancy, (2) may retain all or part of the security deposit as compensation for *unpaid rent, repairs, and cleaning*, and (3) must provide a written accounting of any amounts retained within the specified period. If, within the specified period, the landlord has not provided the tenant with a written accounting of the portion of the security deposit he plans to retain, the right to retain all or part of the security deposit under section 1950.5, subdivision (f), has not been perfected, and he must return the entire deposit to the tenant.

> *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744-745

12

73.    California Civil Code § 1950.5 provides that a security deposit may only be used for: (1) compensation to the landlord for a tenants default in rent; (2) repairing damage to the premises that was caused by the tenant and is exclusive of ordinary wear and tear; (3) cleaning the unit to return it to the level of cleanliness at the start of the tenancy; and, (4) the cost of repairing the landlord's personal property, but only if the rental agreement authorizes use for such.[7]

74.    California Civil Code prohibits, in part, the landlord from:

> assert[ing] a claim against the tenant or the security for damages to the premises or any defective conditions that preexisted the tenancy, for ordinary wear and tear or the effects thereof, whether the wear and tear preexisted the tenancy or occurred during the tenancy, or for the cumulative effects of ordinary wear and tear occurring during any one or more tenancies.[8]

75.    California Civil Code further establishes the process a landlord must follow specifically when a tenancy is ending unrelated to an eviction, as is the case here.  The landlord shall notify the tenant in writing of the right to request an initial inspection of the premises.[9] The purpose of such inspection is to give the tenant an opportunity to repair identified issues, so that the tenant can avoid deductions from the security.[10]

76.    After such initial inspection, the landlord is required to give the tenant an itemized statement (in person or left in the premises) that specifies the repairs or cleanings allowed under the law, including the text of the law.[11]

77.    The tenant shall then have the opportunity to correct such issues reported, if it is their obligation to do so, to avoid deductions to their security deposit.[12]

78.    The landlord is prohibited from making deductions to the security deposit

---

[7] Cal. Civ. Code § 1950.5(b)(1-4)
[8] Cal. Civ. Code § 1950.5(e)(2)(A)
[9] Cal. Civ. Code § 1950.5(f)(1)
[10] Cal. Civ. Code § 1950.5(f)(1)
[11] Cal. Civ. Code § 1950.5(f)(2)
[12] Cal. Civ. Code § 1950.5(f)(3)

CLASS ACTION COMPLAINT

for repairs or cleaning issues that were not identified in the initial inspection, unless the identified repair or cleaning was not done by the tenant after notification of the need to do so, the repair or cleaning was for damages that occurred between the inspection and the move-out, or the tenant's furniture or possessions prevented the landlord from finding the need for cleaning or repair.[13]  To reiterate, if repairs or cleaning issues were not identified in the initial inspection, a landlord may not deduct costs for any repair or cleaning from the security deposit.

79.    After the tenant moves out, the landlord has twenty-one (21) days to personally deliver or send by first-class mail, postage prepaid, (1) a copy of an itemized statement of deductions from the security deposit with the lawful reasons for such deductions, and (2) any remaining portion of the security to the tenant.[14]  Importantly, the landlord is required to include copies of documents (like receipts from service providers) showing charges incurred and deducted by the landlord to repair or clean the premises with the itemized statement.[15]

80.    Specifically, a landlord is required to provide details of who did the work. If the landlord did the work, the itemized statement shall reasonably described the work performed and must include the time spent and the reasonable hourly rate charged.[16] If someone other than the landlord did the work, the landlord shall provide the tenant a copy of the bill, invoice, or receipt supplied by the person or entity performing the work, and the landlord must provide the tenant with the name, address, and telephone number of the person or entity, in the itemized statement if the bill, invoice, or receipt does not include that information.[17]

81.    If the landlord fails to comply with the law, the landlord is not entitled to keep any of the security deposit.[18]

82.    Further, if possession of the premises is returned to a landlord after April

---

[13] Cal. Civ. Code § 1950.5(f)(4)-(6)
[14] Cal. Civ. Code § 1950.5(h)(1)
[15] Cal. Civ. Code § 1950.5(h)(2)
[16] Cal. Civ. Code § 1950.5(h)(2)(A)
[17] Cal. Civ. Code § 1950.5(h)(2)(B)
[18] Cal. Civ. Code § 1950.5(h)(7)

CLASS ACTION COMPLAINT

1, 2025, the landlord is required to take photos of the unit *before* and *after* any repairs or cleaning is done to the unit.[19] If a deduction is made from the security deposit for repairs or cleaning, such photos are to be delivered to the tenant along with a written explanation of the cost for the allowable work done to the premises.[20]

83. Here, Property Manager did none of the above things required of it under the law. In so doing, it acted according to its own policy or procedure regarding its handling of residential security deposits.

84. Defendants did not give Plaintiff Guidry any written notice of her right to request an initial inspection. Instead, Property Manager told her that she would be receiving her whole security deposit back.

85. After Plaintiff Guidry vacated, Property Manager informed her that she owed them One Hundred and One dollars ($101) as pro-rated rent for January of 2026. Plaintiff Guidry mailed a check for the demanded sum on January 5, 2026. Plaintiff's new address was additionally included on the return address on the envelope for the January 5, 2026, letter. Property Manager never cashed the check.

86. Property Manager, despite knowing Plaintiff Guidry's new address, did not return any portion of her security deposit and failed to provide any itemized statement by mail, email, or any other medium. Property Manager provided no photos or any documentation to Plaintiff Guidry. Property Manager did not give any explanation as to why Plaintiff Guidry's security deposit was retained and why she was charged even more than the amount retained.

87. Property Manager's conduct was not done in isolation. Property Manager made a calculated business decision to defraud tenants, with the intention to organize efforts in a pattern of systemic larceny and abuse.

G. **Defendants' Larceny**

88. To commit statutory larceny in California, one must: (1) take the personal

---

[19] Cal. Civ. Code § 1950.5(g)(2) (emphasis added)
[20] Cal. Civ. Code § 1950.5(h)(2)(D)

CLASS ACTION COMPLAINT

property, (2) of another, (3) without consent, and (4) with the intent to permanently deprive the owner of that property.[21]  Liability is imposed upon all actors who commit the acts outlined above, and those who knowingly aid and abet such actors, or those who knowingly receive such stolen property.[22]

89.    Defendants have developed common policies, practices, procedures or schemes designed to steal money from current and former tenants, without consent, to benefit itself and Owner with the intention of permanently depriving the money from the current and former tenants.

90.    Such money is stolen pursuant to false and fraudulent misrepresentations as outlined above, which are made knowingly and by design, pursuant to common policies, practices, procedures, or schemes. Defendants use such fraudulent misrepresentations to retain the security deposit entrusted to it and intentionally charge tenants unlawful fees.

**H. Plaintiffs Suffered Damages**

91.    Defendants' policies, practices, procedures, and schemes have caused Plaintiffs and Class Members to suffer damages.  They have monetary damages in the form of losing security deposits, paying additional charges related to habitability that were not their legal responsibility to pay, and being charged hidden fees.

<u>**CLASS ACTION ALLEGATIONS**</u>

92.    Plaintiffs bring this class action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following Classes:

> RENT INCREASE CLASS
> All persons in California who, during the period beginning four (4) years prior to the filing of the Complaint through the date of class certification, were tenants of residential properties owned or managed by Defendants, and whose rent was increased by or at the direction of Defendants.("Rent Increase Class").

///

///

---

[21] Cal. Pen. Code § 484
[22] Cal. Pen. Code § 496

LATE FEES CLASS
All persons in California who, during the period beginning four (4) years prior to the filing of the Complaint through the date of class certification, were tenants of residential properties owned or managed by Defendants, and who were charged and paid one or more late fees by or at the direction of Defendants. ("Late Fees Class").

93.    Plaintiff Espinoza additionally brings this class action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following Classes:

HABITABILITY INJUNCTIVE CLASS
All persons who are current tenants of the residential property commonly known as Tennyson, who have been subjected to one or more of the Habitability Conditions at that property.("Habitability Injunctive Class").

94.    Plaintiff Guidry additionally brings this class action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following Class:

SECURITY DEPOSIT CLASS
All persons in California who, during the period beginning four (4) years prior to the filing of the Complaint through the date of class certification, were tenants of residential properties owned or managed by Defendants, whose tenancies ended, and from whom Defendants deducted any amount from their security deposit.("Security Deposit Class")

95.    Excluded from the Classes are Defendants, their officers and directors, families and legal representatives, heirs, successors, or assigns and any entity in which Defendants have a controlling interest, and any Judge assigned to this case and their immediate families.

96.    Plaintiffs reserve the right to amend or modify the definition of the Class and/or Subclass to provide greater specificity and/or further division into subclasses or limitations to particular issues.

97. **Numerosity:** The members of the Classes are so numerous that joinder of all members is impracticable. The exact number or identification of Class Members is presently unknown, but it is believed that there are thousands of Class Members in the Classes. The identities of the Class Members are ascertainable and can be determined from records maintained by Defendant.

98. **Predominance of Common Questions:** There are multiple questions of law and fact common to the Class that will predominate over questions affecting only certain individual Class Members. The questions of fact and law that are common to the Class Members include:

a) Whether Defendants raised rents without notice;

b) Whether Defendants raised rents in the middle of a fixed-term lease;

c) Whether Defendants substantially complied with a landlord's obligations under the Implied Warranty of Habitability;

d) Whether Defendants breached the Implied Warranty of Habitability;

e) Whether Plaintiffs and Class Members are entitled to an injunction;

f) Whether Defendants routinely abused the landlord's right of access to Plaintiff's and Class Members' homes;

g) Whether Defendants refused to accept or acknowledge receipt of lawful rent payments;

h) Whether Defendants substantially and directly interfered with Plaintiff's and Class Members' right to quiet enjoyment;

i) Whether Defendants breached contracts with Plaintiffs or Class Members;

j) Whether Defendants engaged in unfair or deceptive business practices;

k) Whether Defendants violated the California Unfair Competition Law (Business & Professions Code § 17200, et seq);

l) Whether the fees Defendants charged Plaintiffs and Class Members are considered "debts" under debt collection laws;

///

18

m) Whether Defendants had a policy, practice, or procedure of collecting the alleged debts, when they did not have a legal basis for doing so;

n) Whether Defendants engaged in larceny;

o) Whether Defendants had a policy, practice, or procedure that complied with the laws;

p) Whether Defendants were negligent;

q) Whether Defendants acted in bad faith;

r) Whether Defendants caused Plaintiff and Class Members damages;

s) Whether Plaintiff and Class Members are entitled to statutory damages, actual damages, or other monetary relief, and/or equitable relief;

99.    **Typicality:** Plaintiffs' claims are typical of those of other Class Members because all had their rent raised without notice, they were charged illegal fees, and their security deposits were unlawfully retained, due to Defendants' virtually identical conduct directed at all Class Members.

100.    **Adequacy:** Plaintiffs are adequate representatives of the Classes because they do not have any conflicts with other Class Members. They experienced the same issues as the Class Members. They are members of the Classes they seek to represent, and their interests are the same as the other Class Members. Plaintiffs are represented by experienced and competent attorneys ("Class Counsel") who have litigated numerous class actions. Class Counsel intends to prosecute this action vigorously for the benefit of everyone in the Class. Plaintiffs and Class Counsel can fairly and adequately protect the interests of all members of the Class.

101.    **Superiority**: A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because individual litigation of Class Members' claims would be impracticable and would be unduly burdensome for all involved, including the courts. Without the class action vehicle, the Class Members would have no reasonable remedy and would continue to suffer. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. There

is no foreseeable difficulty in managing this case as a class action and it would provide the benefits of a single uniform adjudication of many claims, with economies of scale, and comprehensive supervision by a single court.

### First Cause of Action

### Unlawful Rent Increase

### Plaintiffs against Defendant Property Manager

102. California Civil Code § 827 applies to periodic tenancies—meaning tenancies that automatically renew in recurring intervals (e.g., month-to-month or shorter)—and does not apply to fixed-term leases. When a fixed-term lease expires, and the landlord continues to collect or accept rent, the parties have legally renewed their lease as a periodic month-to-month tenancy, with all other terms, including rent, carrying over into the renewal under Cal. Civ. Code § 1945.

103. Plaintiffs and Class Members each entered leases with Defendants that established an initial rent rate.

104. Plaintiffs and Class Members remained in their units at Tennyson after the expiration of a fixed-term lease and continued paying rent to Property Manager.

105. Property Manager accepted such rent payments.

106. Property Manager, after the expiration of the fixed-term leases, and after accepting rent, thereafter, attempted to have Plaintiffs and Class Members enter new fixed-term leases, which raised the rent without notice.

107. Property Manager raised rent during the fixed-term lease, without a legal basis to do so.

108. Under Cal. Civ. Code § 827, a landlord is required to give a tenant written notice of a rent increase at least thirty (30) days prior to the date that the rent increase is to take effect.

109. Property Manager did not give at least thirty (30) days' written notice of rent increases prior to the increases taking effect.

110. By failing to give proper notice of the rent increases, and/or by raising the

CLASS ACTION COMPLAINT

rent during fixed term leases, the amount of increased rent is invalid and illegal under Cal. Civ. Code § 827.

111. Property Manager, despite knowing that the increased rent was invalid, nonetheless demanded and accepted the invalid rent amount.

112. As a direct and proximate cause of Property Manager's invalid rent increases, Plaintiffs and Class Members were harmed.

113. Plaintiffs and Class members are entitled to a return of all rent paid in excess of the initial rent rate every month.

**Second Cause of Action**

**Breach of the Implied Warranty of Habitability**

**Injunctive Relief Only**

**Cal. Civ. Code § 1941 et seq.**

**Plaintiff Espinoza against Defendants**

114. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

115. The Implied Warranty of Habitability is implied in every rental lease in California.

116. Defendants, as landlords, are required to provide a premises that meets minimum habitability standards for all tenants including Plaintiff Espinoza and the Habitability Injunctive Class Members.

117. Defendants have failed to provide a premises that meets minimum habitability standards.

118. Defendants' failures include, but are not limited to:

a. failure to provide working hot water;

b. failure to provide working plumbing;

c. failure to provide working heat;

d. failure to keep all common areas sanitary, and free from all accumulations of debris, filth, rubbish, garbage, rodents, and vermin;

21

CLASS ACTION COMPLAINT

e. failure to provide an adequate number of appropriate receptacles for garbage and rubbish, kept clean and in good condition;

f. failure to repair or replace degenerating carpet or other flooring;

g. failure to provide working stoves;

h. failure to provide working refrigerators;

i. failure to abate visible mold growth;

j. failure to perform proper maintenance or prevent general dilapidation;

k. failure to abate any nuisance; and

l. failure to address or remediate Habitability Conditions.

119. Despite these failures, Defendants continue to charge and demand full payment of rent from all tenants at Tennyson.

120. As a direct and proximate result of Defendants' repeated breaches of the Implied Warranty of Habitability above, Plaintiff Espinoza and the Habitability Injunctive Class Members have been harmed.

121. Plaintiff Espinoza seeks an injunction against Defendants to remedy the acts and omission that breach the Implied Warranty of Habitability.

122. Defendants should be enjoined from demanding or collecting rent until they abate all the habitability issues raised herein.

123. Without an injunction against Defendants' actions and omissions, Plaintiff Espinoza and the Habitability Injunctive Class Members are at immediate risk of further suffering because Defendants have routinely refused to correct their actions, even when facing multiple citations by the City.

124. This Court should order an immediate preliminary injunction against Defendants, preventing Defendants from collecting any rent at Tennyson until all habitability issues have been abated and minimal habitability standards have been restored for all tenants at Tennyson, especially the hot water.

125. The scale weighing the parties' rights tips in favor of Plaintiff Espinoza and the Habitability Injunctive Class Members because the harm to them is real and it

affects them every day. It impacts them in the morning when they have to take a cold shower before leaving for work, and in the afternoon when they can't use the laundry room because it is filled with vagrants using drugs, and at night when they can't go to their car because it is dark and unsafe for lack of lighting and gang members selling drugs due to the absence of security.  Maybe most importantly, it directly impacts their finances (paying for uninhabitable units) and their health (black mold, vermin, trash, etc). On the other hand, the impact to Defendants would be merely financial and an injunction would only order them to do what they are already required to do by law. Plaintiffs pray for the Court to assist them in their ongoing struggle for decent living conditions.

126.    An injunction would serve the public interest because Defendants have received millions of dollars of public funding to make Tennyson livable, but Defendants kept the funds for themselves. An injunction would show other landlords that they are not entitled to collect rent without first providing minimally habitable housing. The issues presented by permitting a landlord to collect rent while ignoring their legal obligation to provide habitable housing is detrimental to the public interest because it sends the message to institutional landlords that a tenant will be forced to engage in prolonged litigation before a landlord is required to be accountable for ongoing, documented failures to provide habitable housing.  Meaning, landlords can continue to cut costs as it relates to habitability and raise the rent because they know that most tenants will not be able to protect their rights. This would result in more unlawful detainer actions being filed and increase the number of people displaced by landlord malfeasance and burden on the courts with unjust eviction proceedings.

127.    The Court should issue a declaration clarifying the rights and obligations of the parties to this lawsuit under Cal. Civ. Code § 1941 *et seq*, so that the parties have clarity as to their obligations and Plaintiffs' and Class Members' preserve their rights to seek individual damages from Defendants.

///

### Third Cause of Action

### Violation of § 12-1.12 of the Hayward Mun. Code

### Injunctive and Declaratory Relief Only

### Plaintiff Espinoza against Defendants

128. Defendants are "landlords" within the meaning of § 12-1.04 (m) of the Hayward Mun. Code.

129. Defendants interrupted, terminated, or failed to provide housing services required by contract, state, or municipal housing, health, or safety laws.

130. Defendants failed to perform repairs and maintenance required by contract, state, or municipal housing, health, or safety laws.

131. Defendants failed to exercise due diligence in completing repairs and maintenance, and failed to follow appropriate industry repair, containment, and remediation protocols.

132. Defendants abused the landlord's right of access to Plaintiff's and Class Members' homes.

133. Defendants substantially and directly interfered with Plaintiffs' and Class Members' right to quiet enjoyment.

134. Defendants refused to accept or acknowledge receipt of a tenants' lawful rent payments.

135. Defendants did the above actions in bad faith.

136. As a direct and proximate result of Defendants' actions, Plaintiffs and Class Members have been harmed.

137. Defendants' actions that harmed Plaintiffs and Class Members are ongoing and continuous.

138. Plaintiffs are entitled to bring this action to seek an injunction pursuant to § 12-1.12(k) of Chapter 12 Article 1 of the Hayward Mun. Code.

139. Without an injunction against Defendants, Plaintiff Espinoza and the Habitability Injunctive Class Members are at immediate risk of suffering irreparable

CLASS ACTION COMPLAINT

harm because Defendants refuse to correct their actions that constitute a breach of Hayward Mun. Code § 12-1.12(b)(1), (2), (3), (4), (6), and (9).

140. This Court should order an immediate preliminary injunction against Defendants, preventing Defendants from collecting any rent at Tennyson until all habitability issues have been abated and minimal habitability standards have been established for all tenants at Tennyson.

141. The balance of equity tips in favor of Plaintiff Espinoza and the Habitability Injunctive Class Members' because the harm to them impacts them as discussed above while the impact to Defendants is merely financial and would require them to do what they are already legally required to do.

142. An injunction would serve the public interest in the same ways discussed above.

143. Plaintiffs and Class Members are entitled to actual damages, statutory damages, treble damages, reasonable attorney's fees, and costs pursuant to Hayward Mun. Code § 12-1.12(l)(2) and applicable state law.

144. The Court should issue a declaration clarifying the rights and obligations of the parties to this lawsuit under the Hayward Mun. Code, so that the parties have clarity as to their obligations and Plaintiffs' and Class Members' preserve their rights to seek individual damages from Defendants.

### Fourth Cause of Action

### Breach of Written Contract

### Plaintiffs against Defendants

145. A valid written contract, the Lease, exists between Plaintiffs and Defendants.

146. Plaintiffs and Class Members did all, or substantially all, of the significant things that the Lease required them to do.

147. Defendants failed to do many things that the contract required them to do or prohibited them from doing.

CLASS ACTION COMPLAINT

148. Under California law, the Lease automatically contains the Implied Warranty of Habitability. *See Green v Superior Court* (1974) 10 Cal.3d 616, 629.

149. Defendants breached the lease by failing to maintain Tennyson in a habitable condition which breached the Implied Warranty of Habitability.

150. The Lease includes terms regarding Plaintiff Guidry and Class Members' security deposits.

151. Defendants breached the Lease by (1) failing to provide written notice of their right to request an initial inspection at move out, (2) making unlawful deductions to their security deposits, (3) failing to return unused portions of their security deposits, and (4) failing to provide legally sufficient itemized accountings of all deductions, with supporting documentation.

152. Defendants have breached the Leases with Class Members in the same or substantially similar manner as they did with Plaintiffs.

153. As a direct and proximate result of the breaches, Plaintiffs and Class members have suffered damages in an amount to be proven at trial.

### Fifth Cause of Action

### Breach of the Implied Covenant of Good Faith and Fair Dealing

### Plaintiffs against Defendants

154. Plaintiffs and Defendants entered into written contracts, the Lease.

155. Plaintiffs did all, or substantially all of the significant things that the Lease required them to do.

156. Plaintiffs performed under the Lease and all conditions required for Defendants' performance had occurred.

157. Defendants made unlawful deductions from Plaintiff Guidry's and the Security Deposit Class Members' security deposits and did not provide the required documentation, which deprived them of the benefits under the contracts.

158. Defendants failed to keep Tennyson in a condition that substantially complied with the Implied Warranty of Habitability.

159. Defendants raised Plaintiffs' and the Rent Increase Class Members' rent without adequate notice.

160. Defendants charged Plaintiffs and Late Fees Class Members late fees after Defendants failed to timely process Plaintiffs' and Class Members' rent payments.

161. By doing so, Defendants did not act in good faith.

162. As a direct and proximate result of Defendants' actions, Plaintiffs and Class Members were harmed.

## Sixth Cause of Action

### Unfair and Deceptive Business Practices

### Under Cal. Business and Professions Code § 17200 et seq.

### Plaintiffs against Defendants

163. In California, "any unlawful, unfair or fraudulent business act or practice" constitutes "unfair competition" under Cal. Bus. and Prof. Code §17200.

164. The violations of the Cal. Civ. Code §§ 827, 1941 *et* seq, 1788 *et seq*, 1950.5, and 1671, in addition to the other wrongdoing alleged herein, constitute unlawful, unfair and/or fraudulent business acts and practices, and therefore "unfair competition" for the purposes of Cal. Bus. and Prof. Code §17200. Among other violations, Defendants' collections and attempted collections of (1) rent raised without adequate notice; (2) late fees; (3) security deposits; (4) amounts over and above a retained security deposit; and (5) any rent while in breach of the Implied Warranty of Habitability, are all unlawful, and all entitle Plaintiffs and Class Members to restitution.

165. Plaintiffs have suffered financial injury in fact because they have lost money and/or property as a result of such unfair competition.

166. The facts set forth above establish that Plaintiffs and Class Members are entitled to judgment against Defendants, jointly and severally, awarding restitution to Plaintiffs and Class Members of all monies acquired by means of the described unfair competition, including wrongfully collected rent, late fees, and security deposits withheld.

CLASS ACTION COMPLAINT

167. Plaintiffs and Class Members are further entitled to declaratory and injunctive relief determining the rights and obligations in dispute among the parties to this action and an order mandating Defendants to adhere to the requirements of law.

## Seventh Cause of Action

## Rosenthal Fair Debt Collection Practices Act

## Cal. Civ. Code § 1788 et seq.

## Plaintiffs against Defendants

168. In enacting the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.33 ("RFDCPA"), the California Legislature found that "[u]nfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers [that] [t]here is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty and due regard for the rights of the other" and that it was necessary to ". . . prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." Cal. Civ. Code § 1788.1.

169. Defendants are debt collectors within the meaning of Cal. Civ. Code § 1788.2(c) because in the ordinary course of business they regularly collect consumer "debts" including but not limited to rent payments, fees, and move out costs.

170. The RFDCPA prohibits unfair and deceptive conduct. *Cavalry SPV I, LLC v. Watkins*, 36 Cal. App. 5th 1070, 1084 (2019). Defendants violated the RFDCPA by (1) initiating contact with Class Members to collect fees and charges Defendants knew or should have known were procured through unlawful means, and that, even if valid, and would be subject to a vast array of potential defenses; and, (2) by accepting and retaining payments made on the invalid rent increases, late fees, and security deposit related charges.

171. The foregoing acts constitute multiple violations of the RFDCPA against Defendants and the violations were knowing and willful.

CLASS ACTION COMPLAINT

172.   As a result of each and every violation of the RFDCPA, Plaintiffs and Class Members are each entitled to actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages of $1,000 under to Cal. Civ. Code § 1788.30(b); and reasonable attorneys' fees and costs pursuant to Cal. Civ. Code § 1788.30(c).

## Eighth Cause of Action

### Unlawful Retention of Residential Security Deposits

### Cal. Civ. Code § 1950.5

### Plaintiff Guidry Against Defendants

173.   Defendants did not have a policy, practice, or procedure that complied with the initial inspection practices under Cal. Civ. Code § 1950.5(f)(1). Tenants were deprived of the ability to maximize the return of their security deposit.

174.   Defendants withheld some or all of Plaintiff Guidry's and the Security Deposit Class Members' security deposits.

175.   Defendants had a policy, practice, or procedure of charging tenants costs associated with returning a unit to a condition that was better than as delivered to the tenants, in violation of Cal. Civ. Code § 1950.5(e)(2).

176.   This policy, practice, or procedure did not exclude ordinary wear and tear from the charges, or otherwise credit tenants for ordinary wear and tear, in violation of Cal. Civ. Code § 1950.5(b)(2).

177.   Defendants did not have a policy, practice, or procedure to provide itemized statements indicating the basis for, and the amount of, security deposits withheld, within twenty-one (21) days of Class Members' move-out, by first class mail or personal delivery as required by Cal. Civ. Code § 1950.5(h)(1).

178.   Defendants did not provide copies of documents showing charges incurred and deducted by Defendants to repair or clean the premises, along with the itemized statements, as required by Cal. Civ. Code § 1950.5(h)(2).

179.   Defendants, as a result of these charges, practices, policies, or procedures, unlawfully retained some or all of the Security Deposit Class Members' deposits.

CLASS ACTION COMPLAINT

180. Defendants' misconduct described above was done in bad faith.

181. As a direct and proximate result of Defendants' conduct, the Security Deposit Class Members suffered damages.

182. Plaintiff Guidry and the Security Deposit Class Members are entitled to actual damages and statutory damages of twice the amount of their security deposits, pursuant to Cal. Civ. Code § 1950.5(m).

**Ninth Cause of Action**

**Statutory Larceny**

**Cal. Pen. Code §§ 484 & 496**

**Plaintiffs against Defendants**

183. Cal. Pen. Code § 496 imposes liability upon:

> [e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained[.]

184. Cal. Pen. Code § 484, which defines "theft", states in pertinent part:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft.

185. Under California law, the amounts Class Members paid in illegally raised rent, late fees, security deposits and money paid at move out which was over and above their deposit, constitutes "property" that can be the subject of "theft."

CLASS ACTION COMPLAINT

186.    Defendants acted in a manner constituting theft by defrauding Plaintiffs and Class Members of money by making false or fraudulent representations or pretenses, with the specific intent to deprive Plaintiffs and Class Members of their property.

187.    Plaintiffs and Class Members are entitled to treble damages, as well as attorneys' fees and costs as a result of Defendants' violations of Cal. Pen. Code § 496(a) pursuant to Cal. Pen. Code § 496(c).

## Tenth Cause of Action

### Negligence

### Plaintiffs Against Defendants

188.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

189.    Defendants had a duty to each Plaintiff and each Class Member to act lawfully and as a reasonably prudent landlord.

190.    Defendants breached this duty, with their acts and omissions, because they failed to exercise ordinary care that would be reasonably expected from a reasonably prudent landlord.

191.    In addition to failing to act reasonably, Defendants are negligent per se because they routinely violate numerous California landlord-tenant laws as alleged herein.

192.    Defendants are regulated entities under each of the California landlord-tenant laws in this Complaint, which impose legal duties upon Defendants.

193.    Plaintiffs and Class Members are within the class of persons that each of the California landlord-tenant laws herein were designed to protect.

194.    Defendants' breaches through their acts and omissions, directly and proximately caused damages to Plaintiffs and Class Members.

195.    Defendants' breaches were substantial factors in Plaintiffs' and Class Members' damages alleged in this Complaint, with the amounts to be proven at trial.

CLASS ACTION COMPLAINT

**Eleventh Cause of Action**

**Unlawful Liquidated Damages**

**Cal. Civ. Code § 1671**

196. Defendants rented real property to Plaintiffs and Class Members for use as dwellings by Plaintiffs and Class Members subject to Cal. Civ. Code § 1671(c)(2).

197. Defendants charged illegal late fees to cover allegedly indeterminable costs related to a tenant's breach. These alleged costs were not connected to any actual costs and can only be considered penalties meant to enrich Defendants. Such unconnected penalties are considered liquidated damages in California under Cal. Civ. Code § 1671.

198. Cal. Civ. Code § 1671(d) provides that "a person in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

199. Any damages Defendant sustained as a result of Plaintiffs' and Class Members' alleged late payment of rent or harm to their units is neither impracticable nor extremely difficult to ascertain. Defendants are not charging such late fees as the result of reasonable efforts to estimate fair compensation for Defendants' actual damages sustained due to their late receipt of rent from Plaintiffs or Class Members. Defendants' late fees are usurious, unreasonable, excessive, and voidable under California law.

200. Defendants' excessive late fees are accordingly unlawful pursuant to Cal. Civ. Code § 1671(d). Plaintiffs and Class Members are entitled to restitution of all fees Defendants collected from tenants for the late payment of rent or other outstanding balances, as well as interest and other relief as specifically prayed for herein.

201. As a direct and proximate cause of Defendants' conduct, Plaintiffs and Class Members suffered damages.

CLASS ACTION COMPLAINT

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for the following against Defendants:

**Class Certification**

1. Certification of the Classes, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and appointment of Plaintiffs as representatives of the Classes and their attorneys as Class Counsel;

**Cause One: Unlawful Rent Increase**

2. Compensatory damages in an amount to be determined;

3. Pre-judgement and post-judgement interest;

**Cause Two: Breach of the Implied Warranty of Habitability**

4. All relief requested, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of members of the Habitability Injunctive Class under Cal. Civ. Code 1941.1;

**Cause Three: Violation of § 12-1.12 of the Hayward Mun. Code**

5. All relief requested, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of members of the Habitability Injunctive Class under § 12-1.12(k) of the Hayward Mun. Code;

6. Reasonable attorneys' fees and costs, as provided by § 12-1.12(l)(1) of the Hayward Mun. Code and applicable state law;

**Cause Four: Breach of Written Contract**

7. All available relief as requested above;

8. Consequential and incidental damages in an amount to be determined according to proof;

9. Compensatory damages in an amount to be determined according to proof;

10. Attorneys' fees and costs;

11. Pre-judgement and post-judgement interest;

///

**Cause Five: Breach of the Implied Covenant of Good Faith and Fair Dealing**

12. All available relief as requested above;

13. An award of compensatory damages in an amount to be determined according to proof;

**Cause Six: Unfair and Deceptive Business Practices, Cal. Bus. & Prof. Code § 17200 et seq**

14. All available relief as requested above;

15. Restitution of all sums unlawfully collected, demanded, or retained for all California residents who are members of the Rent Increase Class, Late Fees Class, and Security Deposit Class;

**Cause Seven: Rosenthal Fair Debt Collection Practices Act, Cal. Civ Code § 1788 et seq**

16. All available relief as requested above;

17. Actual damages, statutory damages, and reasonable attorneys' fees and costs, pursuant to Cal. Civ. Code § 1788.30;

18. All relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of members of the Rent Increase Class, Late Fees Class, and Security Deposit Class under Cal. Civ. Code § 1788.30;

19. Compensatory, statutory, and nominal damages in an amount to be determined;

**Cause Eight: Statutory Larceny, Cal. Pen. Code §§ 484 & 496**

20. All available relief as requested above;

21. Treble damages, as well as attorneys' fees and costs, pursuant to Cal. Pen. Code § 496(c);

22. Equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

///

**Cause Nine: Unlawful Retention of Residential Security Deposits, Cal. Civ. Code § 1950.5**

23. All available relief as requested above;

24. Actual damages;

25. Statutory damages in the amount of twice the security deposit, pursuant to Cal. Civ. Code § 1950.5(m);

26. Pre-judgment and post-judgment interest;

**Cause Ten: Negligence**

27. All available relief as requested above;

28. General damages and special damages;

29. Punitive damages, as provided by Cal. Civ. Code § 3294;

**Cause Eleven: Unlawful Liquidated Damages**

30. All available relief as requested above;

31. Restitution for all amounts paid in unlawful liquidated damages;

**All Causes of Action:**

32. All available relief as requested above;

33. Attorneys' fees, pursuant to Cal. Code of Civ. Proc. § 1021.5;

34. For any penalties available pursuant to Cal. Civ. Code § 3345;

35. Such other relief as the court deems fair and reasonable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all claims so triable.

DATED: April 17, 2026                    **SHAY LEGAL, APC**

By: *s/ Daniel G. Shay*
Daniel G. Shay
Dan@ShayLegal.com
*Attorneys for Plaintiffs*

*Additional counsel on following page*

CLASS ACTION COMPLAINT

DATED: April 17, 2026                          **SWIGART LAW GROUP, APC**

                                               By: *s/ Joshua B. Swigart*
                                               Joshua B. Swigart
                                               Josh@SwigartLawGroup.com
                                               *Attorneys for Plaintiffs*


DATED: April 17, 2026                          **LAW OFFICE OF KEVIN LEMIEUX, APC**

                                               By: *s/ Kevin Lemieux*
                                               Kevin Lemieux
                                               Kevin@LawyerKevin.com
                                               *Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT